Jeffrey B. Maltzman, CA Bar No. 131758
Edgar R. Nield, CA Bar No. 135018
Gabrielle De Santis Nield, CA Bar No. 110930
Rafaela P. Castells, CA Bar No. 290828
MALTZMAN & PARTNERS, P.A.
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880
Facsimile: (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
gabn@maltzmanpartners.com

Attorneys for Defendant, PRINCESS CRUISE LINES, LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS SHAY, SANDRA SHAY, BRUCE GRANT and MICHELLE GRANT,<br><br>              Plaintiffs,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD.,<br><br>              Defendant. | CASE NO.: 2:20-CV-04064-RGK-SK<br><br>**DEFENDANT PRINCESS CRUISE LINE LTD.'S MOTION TO DISMISS**<br><br>Date:  July 27, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Magistrate: Hon. Steve Kim<br>Filed:  05/04/2020 |

*(sidebar, left margin)* MALTZMAN & PARTNERS 681 ENCINITAS BOULEVARD, SUITE 315 ENCINITAS, CA 92024 TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD ........................................................................................ 6

III.    MEMORANDUM OF LAW ............................................................................. 6

        A.      Federal Maritime Law Applies to Plaintiffs' Claims............................. 7

        B.      Plaintiffs Cannot Recover for Emotional Distress................................. 7

                1.      Plaintiffs Francis Shay and Sandra Shay's Allegations Do Not   Satisfy the Zone of Danger Test ............................. 7

                2.      To Recover for Emotional Distress Plaintiffs Bruce Grant and   Michelle Grant Must Allege Symptoms ........................... 12

                3.      To Recover for Emotional Distress All Plaintiffs Must Plausibly    Allege a Physical Manifestation of the Claimed Distress ...................................................................... 12

        C.      Plaintiffs Cannot Recover for Fear or Even a Mere Diagnosis, Without More, as a "Physical Harm" ...................................... 14

        D.      Plaintiffs Have Not Plausibly Alleged Causation............................... 15

        E.      Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Cautioned Against .............. 16

        F.      Plaintiffs' Claims for Punitive Damages Are Foreclosed as a Matter of Law and Should be Dismissed or Stricken ......................... 17

V.      CONCLUSION ............................................................................................... 19

DEFENDANT'S MOTION TO DISMISS                                          2:20-CV-04064-RGK-SK

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

# TABLE OF AUTHORITIES

## Cases

*Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) .............................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................6

*Bonner v. Union Pac.*, 123 F. App'x 777 (9th Cir. 2005) ..........................................9

*Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012)....................................9

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) ............................3, 8, 11

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015) ..................................................................................................................................9

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) ................................................10

*Duet v. Crosby Tugs, LLC*, 2008 WL 5273688 (E.D. La. Dec. 16, 2008) ...............13

*Dunn v. Hatch*, 792 F. App'x 449 (9th Cir. 2019) ...................................................17

*Ellenwood v. Exxon Shipping*, 795 F. Supp. 31 (D. Me. 1992)................................13

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) .................................................19

*Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749 (M.D.N.C. 2014)...................9, 11, 12

*Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190 (2d Cir. 2011) ........................9

*Hutton v. Norwegian Cruise Line Ltd.*, 144 F.Supp.2d 1325 (S.D. Fla. 2001).........11

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) ..7

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) ..........................13

*Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997) .3, 7, 8, 9, 10, 11, 12

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1986)....................................................18

*Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749 (C.D. Cal. Sept. 28, 2018).10

*Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018).............3, 9

*Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003).................3, 7, 8, 10, 11, 17, 19

*Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23 (1st Cir. 2018)............11

*Smith v. A.C. & S., Inc.*, 843 F.2d 854 (5th Cir.1988)...............................................10

*Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) .............................9

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

*Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168 (10th Cir.2000) ................................. 11

*Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033 (9th Cir. 2010) ..................... 8

*Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) ....................................... 7

*Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) ...... 13

*The Dutra Grp. v. Batterton*, 139 S. Ct. 2275 (2019).................................... 17, 18, 19

*Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560 (11th Cir. 1991) ............... 7

*Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403 (S.D. Fla. 1995)........... 13

*Williams v. United States*, 711 F.2d 893 (9th Cir.1983) ............................................ 7

*Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495 (W.D. Wash. Nov. 8, 2002)........................................................................................................................ 12

## Statutes

46 U.S.C. §30303................................................................................................... 19

## Rules

Fed. Rule Civ Pro 12(b)(6) .............................................................................. 6, 17

Fed. Rule Civ Pro 12(f) ....................................................................................... 17

L.R. 7-3 ................................................................................................................... 1

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

Defendant, PRINCESS CRUISE LINES, LTD. (hereafter "Defendant" or "PRINCESS"), hereby files this Motion to Dismiss the Complaint filed by Plaintiffs herein. In the interests of judicial economy, the court is hereby advised that this motion is identical to Motions to Dismiss filed in the matter of *Stanley Dachinger, et al. v. Princess Cruise Lines, Ltd., Case No. 2:20-cv-03847,* in that both are premised on nearly identical Complaints, involve Plaintiffs who were aboard the same cruise, and involve a combination of Plaintiffs who never contracted COVID-19 (Francis Shay and Sandra Shay) and those who at some undisclosed time after their cruise tested positive for COVID-19 (Bruce Grant and Michelle Grant).  None of the Plaintiffs allege having any symptoms of the virus, any substantial physical manifestation to their emotional distress, nor any facts connecting Defendant's alleged conduct with their positive COVID-19 diagnosis.  Other than a conclusory allegation that Plaintiffs Bruce Grant and Michelle Grant "suffer from physical … harm from the disease," (Compl. ¶ 25), Plaintiffs allege only "emotional distress." For the reasons set forth below, Plaintiffs' Complaint should be dismissed.

This motion is made following several conferences of counsel pursuant to L.R. 7-3 which took place between May 7, 2020 and June 1, 2020.

# I.   INTRODUCTION

This is a tort case brought by Plaintiffs who make only a conclusory allegation of "physical … harm" (Compl. ¶ 25), and whose allegations of emotional harm are squarely foreclosed by established precedent.  The Court should dismiss this case for failure to state a claim.

Plaintiffs allege that they were among the thousands of passengers on the *Grand Princess* cruise ship who embarked on February 21, 2020. (Compl. ¶¶ 13, 14.)  Like the vast majority of those passengers, Plaintiffs do not allege that they suffered any physical symptoms of COVID-19. Plaintiffs' claim, without explanation, that merely by virtue of being on the same cruise ship with some individuals that were on the prior cruise, they were at "actual risk of immediate

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

physical injury." (Compl. ¶ 19.)    Plaintiffs' Complaint is nearly identical to numerous complaints filed by the same Plaintiffs' attorneys representing other passengers aboard this same cruise seeking emotional distress damages based only on a fear of contracting COVID-19. The sole difference between this Complaint and the form complaint Plaintiffs' counsel filed in their pure "Fear of COVID-19" cases is the addition of a single passing mention that two of the Plaintiffs contracted COVID-19 at some unspecified time. But courts have held that a bare diagnosis, without any actual symptoms causing functional impairment, is not a cognizable physical harm sufficient to support a disease claim such as is alleged here. Nor does a mere diagnosis support a claim for emotional distress; courts hold that plaintiffs must allege objectively serious physical manifestations of their claimed emotional distress.

Plaintiffs Francis Shay and Sandra Shay ask this Court to recognize an unprecedented theory of liability for emotional distress, unmoored from any physical harm, that is squarely foreclosed by Supreme Court precedent. Francis Shay and Sandra Shay seek damages for emotional distress from fear of contracting COVID-19 based solely on being aboard the same cruise ship along with approximately 3,700 other passengers and crew, some of whom could have interacted with individuals from the preceding cruise who were later diagnosed with COVID-19 after their cruise ended. (Compl. ¶ 18.) If accepted, Plaintiffs' theory would open the door to open-ended liability for every business, school, church, and municipality across America, stalling economic recovery in the wake of the COVID-19 pandemic and complicating the ability of businesses to reopen. Plaintiffs Francis Shay and Sandra Shay are among over 125 individuals who have filed nearly identical lawsuits against Defendant, each seeking one million dollars in compensatory damages for emotional distress plus punitive damages based only on their fear that they could have contracted COVID-19. Significantly, Francis Shay and Sandra Shay do not claim to have contracted COVID-19, to have suffered any

MALTZMAN & PARTNERS
681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

2

symptoms of COVID-19, or even to have ever came into direct contact with the virus. The Supreme Court has squarely held that a plaintiff cannot recover for emotional distress stemming from potential exposure to a disease "unless, and until, he manifests symptoms of a disease." *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). This rule applies to claims of emotional distress brought under federal maritime law. *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358 (S.D. Fla. 2018). Supreme Court precedent thus requires dismissal here, because Plaintiffs Francis Shay and Sandra Shay do not claim to have either contracted COVID-19 or had sufficient symptoms of disease to establish to have contracted the virus as a result of Defendant's conduct. The Supreme Court has consistently reaffirmed this rule precisely to avoid the oppressive societal costs that would occur if claims like Plaintiffs' could go forward. As the Court has explained, "contacts, even extensive contacts," with potential carriers of diseases "are common." *Metro-North*, 521 U.S. at 434. And unlike with physical injury, "there are no necessary finite limits on the number of persons who might suffer emotional injury" as a result of fear of contracting an illness. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546 (1994). If anyone potentially exposed to a contagion could obtain damages for emotional distress, "[t]he large number of those exposed and the uncertainties that may surround recovery" would prompt a "flood" of lawsuits, *Metro-North*, 521 U.S. at 434, and would lead to "the very real possibility of nearly infinite and unpredictable liability for defendants." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003).

Similarly, allowing for liability based purely on a diagnosis of COVID-19 (as Plaintiffs' Bruce Grant and Michelle Grant allege) without any allegation they ever suffered any symptoms of the virus and without casually connecting Plaintiffs' diagnosis to PRINCESS' conduct would permit virtually all of the same harmful consequences. (*See Consolidated Motion to Dismiss, D.E. 31, filed in Case No. 2:20-CV-02267-RGK-SK).* This is particularly important here when dealing with a

virus which causes no symptoms whatsoever in a large percentage of the people who ultimately test positive for the virus. Even if Plaintiffs could recover for their diagnosis or their fear in theory, their Complaint does not plausibly allege facts to establish causation.  In fact, Plaintiffs never even allege they contracted the disease on the vessel or as a result of PRINCESS's conduct.

A "flood" of COVID-19 lawsuits has already begun including over 30 lawsuits just from this one cruise ship, with similar cases filed relating to passengers on other cruises and other vessels. And there is no reason to think the flood will abate. As of the date of filing this brief, approximately 2 million cases of COVID-19 have been confirmed in the United States and approximately 7 million cases worldwide.[1] Given the millions of confirmed cases of COVID-19, it is inevitable that thousands of schools, nursing homes, shopping centers, stadiums, parks, and businesses across America have had cases on their premises. Plaintiffs' claims threaten the ability of businesses to reopen and for the economy to resume.

A positive COVID-19 test result, without more, cannot be carte blanche to sue any business that had an infected individual patronize that business at some point in time in the past. To allow Plaintiffs Bruce Grant and Michelle Grant Stanley to bring such a claim without alleging they suffered any real harm and without any evidence establishing causation between their diagnosis and Defendant's alleged conduct would forestall the economy's reopening. This is especially troublesome considering the extent of asymptomatic cases where an individual tests positive for COVID-19 yet never exhibits symptoms.  By allowing this case to go forward as pled, anyone with a positive COVID-19 test could pick the deepest pocket business they visited and claim they are entitled to millions of dollars in damages simply because another individual who later tested positive had been in the same area previously. Businesses cannot open if they are to be held liable to everyone who

---

[1] *See* Coronavirus Disease 2019 (COVID-19), Cases in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1   visited their business and later tests positive for COVID-19.

2       And if Plaintiffs Francis Shay and Sandra Shay's theory of liability succeeds,

3   then all of the millions of individuals who passed through those venues can similarly

4   claim to have suffered emotional distress even if they never contracted the illness.

5   Straightforward application of the Supreme Court's rules governing these types of

6   disease claims will prevent the cataclysmic result of allowing open-ended liability.

7   The likelihood of endless liability for every business, church, school and other

8   venue in America under Plaintiffs' expansive theory is even more likely in the

9   context of COVID-19, which is now known to be transmitted by asymptomatic

10  individuals which no defendant could realistically detect with current testing

11  limitations. The Supreme Court's limits on such claims are intended to avoid exactly

12  that result, and a straightforward application of those limits mandates dismissal.

13      Plaintiffs are seeking over $1 million each for emotional distress because they

14  feared they might contract COVID-19 (Francis Shay and Sandra Shay) or because

15  they later tested positive for the virus (Bruce Grant and Michelle Grant). Courts

16  require that a plaintiff experience symptoms of their contracted illness, and serious

17  physical consequences from their emotional distress before allowing recovery for

18  the damages alleged herein.  None of the Plaintiffs here allege either.

19      For Plaintiffs Francis Shay and Sandra Shay, there is also a second,

20  independent barrier to Plaintiffs' claims because in addition to requiring that a

21  plaintiff contract the disease, courts further require that the plaintiff's fear must give

22  rise to serious physical consequences before emotional distress damages can be

23  recovered. Mere anxiety or fear about their health is legally insufficient to support a

24  claim for emotional distress in a fear of illness case. Francis Shay and Sandra Shay

25  do not claim they ever contracted COVID-19, nor does they allege serious physical

26  consequences stemming from their alleged emotional distress.

27      Finally, Plaintiffs' request for punitive damages is flatly insufficient under the

28  strict standards governing punitive damages in maritime claims.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                                              2:20-CV-04064-RGK-SK

While evidence will ultimately show that Plaintiffs' factual allegations against PRINCESS are inaccurate and misleading, even accepting the allegations as true for the purposes of this Motion, the Complaint makes clear that Plaintiffs' claims fail to allege sufficient facts to state a claim and must be dismissed.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.   MEMORANDUM OF LAW

Recognizing the potential for widespread liability in disease exposure cases, courts apply strict limits on such cases. The limits include the requirement that a plaintiff must suffer symptoms of the illness **and** must plausibly allege serious physical manifestations of their purported emotional distress. *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997)*; Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992); *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995). Plaintiffs have not plausibly alleged either and thus their case must be dismissed under Rule 12(b)(6). Further Plaintiffs' Complaint should be dismissed based on its failure to allege any facts showing Plaintiffs ever came into actual contract with the virus and on its failure to allege any facts establishing causation. The request for punitive damages should be dismissed or stricken as a matter of law under the facts alleged in this maritime action.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

## A. Federal Maritime Law Applies to Plaintiffs' Claims

As Plaintiffs acknowledge by invoking this Court's maritime jurisdiction, Federal maritime law applies to Plaintiffs' claims.[2] (Compl. ¶ 3) Maritime law applies when "(1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears a significant relationship to traditional maritime activity." *Williams v. United States*, 711 F.2d 893, 896 (9th Cir.1983). "'[V]irtually every activity involving a vessel on navigable waters" is a "traditional maritime activity sufficient to invoke maritime jurisdiction." *See Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ((quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 542 (1995))); *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1654 n. 10 (11th Cir. 1991) (when injury occurs aboard a ship upon navigable waters, federal maritime law governs the substantive legal issues).

## B. Plaintiffs Cannot Recover for Emotional Distress

### 1. Plaintiffs Francis Shay and Sandra Shay's Allegations Do Not Satisfy the Zone of Danger Test

The Supreme Court has "sharply circumscribed" recovery under federal law for claims of emotional harm that are not "brought on by a physical injury or disease"—by requiring that the plaintiff be within the "zone of danger" of defendant's allegedly negligent conduct. *Ayers,* 538 U.S. at 147 (2003). The Supreme Court in *Metro-North* set forth a narrow zone of danger test in cases involving exposure to a disease stating categorically that a plaintiff alleging emotional distress from such exposure "cannot recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 426-27.  The Supreme Court has since reaffirmed *Metro-North*'s categorical rule, explaining in *Ayers* that "emotional distress damages may not be recovered" by "disease-free" plaintiffs. 538 U.S. at 141. The Court specifically "decline[d] to blur, blend, or reconfigure" the "clear

---

[2]  Plaintiffs' Passage Contract applicable to their voyage similarly invokes maritime law. See, https://www.princess.com/legal/passage_contract/plc.html at Section 1.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

line" between "disease-free" plaintiffs, who cannot recover, and those "who suffer from a disease," who can recover under certain conditions. *Id.*; *see also id.* at 146. The Court has also made clear that its rule applies not just to claims based on exposure to toxins like asbestos, but to any claim based on alleged exposure to a disease including "germ-laden air." *Metro-North*, 521 U.S. at 437.

Under the Supreme Court edict, mere *exposure* to a contagion—even a significant and substantial exposure—is insufficient to establish someone is within the required "zone of danger." In *Metro-North*, the plaintiff's employer had negligently exposed him to a "massive" and "tangible" amount of asbestos, placing him in direct, close contact with asbestos every day for a three-year period. *Id.* at 427. The plaintiff feared that this intense prolonged exposure increased his chances of dying from cancer and introduced expert testimony supporting that his risk of cancer had in fact increased. *Id.* The Supreme Court nonetheless held that the plaintiff could not recover since exposure to the disease-causing substance alone was insufficient to establish emotional distress liability. *Id.* at 430 (quoting *Gottshall*, 512 U.S. at 547-48). The Court explained that if "a simple (though extensive) contact with a carcinogenic substance" were sufficient to permit recovery, it would not "offer much help in separating valid from invalid emotional distress claims." *Id.* at 434. "Judges would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at 552.  The Supreme Court adopted the strict zone of danger test specifically to avoid "nearly infinite and unpredictable liability for defendants." *Ayers*, 538 U.S. at 146 (2003) (quoting *Gottshall*, 512 U.S. at 546).

Indeed, courts apply *Metro-North* specifically to dismiss cruise line passenger lawsuits.[3] For instance, in *Negron v. Celebrity Cruises, Inc.*, 360 F. Supp. 3d 1358

---

[3] The Ninth Circuit has expressly held that the test applies under federal maritime law.  *See Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also, Chaparro v.*

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

(S.D. Fla. 2018), a passenger and her family were disembarked to a hospital in Barbados and claimed that, while at the hospital, they were exposed to Ebola virus. *Id.* at 1360. The passengers were not allowed to return to the ship, which they claim added to their anxiety and they filed suit for "severe psychological damages, emotional distress, much personal discomfort, uncertainty, fear and lack of safety," and "undue expenses and costs." *Id.* Applying *Metro-North*, the Court dismissed their claim, holding the passengers cannot recover for emotional harm when they "do not specify any physical harm for which they seek recovery" and there were "no plausible allegations that the plaintiffs sustained a 'physical impact' merely by being sent to a hospital" which had Ebola-infected patients in the same hospital. *Id.* at 1362. Under these principals, Plaintiffs Francis Shay and Sandra Shay cannot satisfy the zone of danger test.[4] They do not allege to have contracted COVID-19 as a result of exposure on the *Grand Princess*. Nor do Plaintiffs allege any symptoms. Indeed, Plaintiffs do not allege to have come into close contact with the disease aboard the ship to face even a possibility of contracting it. Rather, Francis Shay and Sandra Shay allege only that other passengers on their vessel were exposed to passengers who previously had disembarked and were later confirmed to be infected with COVID-19 and that they therefore feared getting the disease. (Compl. ¶ 18.) That is nowhere near sufficient under *Metro-North*, which, again, squarely holds that a plaintiff cannot recover "unless, and until, he manifests symptoms of a

---

*Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (per curiam).

[4] Even setting aside *Metro-North*'s categorical rule, Plaintiffs still would not have stated a claim under the zone of danger test. Federal courts routinely dismiss emotional distress claims when the plaintiff has not plausibly alleged that he actually suffered a physical impact or faced an imminent threat of physical harm. *See, e.g., Bonner v. Union Pac.*, 123 F. App'x 777, 778 (9th Cir. 2005); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1355 (S.D. Fla. 2008); *Crawford v. Nat'l R.R. Passenger Corp.*, No. 3:15-CV-131 (JBA), 2015 WL 8023680, at *12 (D. Conn. Dec. 4, 2015); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 759 (M.D.N.C. 2014); *see also, e.g., Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 199 (2d Cir. 2011) (affirming dismissal of IIED claim where no allegation that plaintiff was in zone of danger). Plaintiffs clearly have not claimed any "physical impact"; again, it is black-letter law that an exposure to a source of disease is not a "physical impact" under Supreme Court precedent. *Metro-North*, 521 U.S. at 430.

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1    disease." 521 U.S. at 427.[5]

2    Nor has Francis Shay and Sandra Shay plausibly alleged an "immediate risk

3    of physical harm." The bare assertion of being "at actual risk of immediate physical

4    injury," is precisely the sort of "[t]hreadbare recital [] of the elements of a cause of

5    action" that cannot defeat a motion to dismiss. *Ashcroft v. Iqbal,* (2009) 556 U.S.

6    662, 678. And even if exposure alone could create an "actual risk" under the zone

7    of danger test—and it cannot—Plaintiffs fail to even allege ever coming into direct

8    contact with COVID-19 and they allege no potential route of transmission.[6]

9    Plaintiffs' failure to allege direct exposure makes the claim doubly deficient under

10   *Metro-North.* The plaintiff in *Metro-North* had been consistently and intensely

11   exposed to asbestos daily basis for a three-year period, and *still* the Court foreclosed

12   recovery. *Metro-North,* 521 U.S. at 427. Plaintiffs allege nothing of the sort here.

13   Moreover, now that the window of potentially contracting COVID-19 has

14   long passed, Francis Shay and Sandra Shay's claim must fail because a plaintiff may

15   not pursue a claim for earlier emotional distress if "at the time the court reviews a

16   claim" the plaintiff can no longer reasonably fear contracting the disease due to

17   defendant's conduct. *Naeyaert v. Kimberly-Clark Corp.,* 2018 WL 6380749, at *8

18   (C.D. Cal. Sept. 28, 2018). This rule, consistent with the zone of danger test, ensures

19   that only those whose fears manifest in the form of an actual diagnosis can recover,

20   in the interest of preventing a "flood" of cases inherently "less susceptible to

21

22   [5]Even if Plaintiffs *had* alleged symptoms, Plaintiffs would still face an independent bar to show
     that the fear of contracting COVID-19 was "genuine and serious"—something beyond "general

23   concern for [one's] future health." *Ayers*, 538 U.S. at 157-58 (quoting *Smith v. A.C. & S., Inc.*, 843

24   F.2d 854, 859 (5th Cir.1988)); *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838 (2009) (plaintiffs
     seeking fear-of-disease damages "must satisfy a high standard in order to obtain them").

25   [6] There are 649 cities in California with populations smaller than the 3,700-person population of
     the *Grand Princess*. (*See* https://www.california-demographics.com/cities_by_population). If

26   Plaintiffs' allegation that merely being in the same population of 3,700 people is sufficient to
     satisfy the zone of danger requirement, then anyone who lived in any of those 649 cities could

27   become subject to emotional distress liability whenever they invited anyone onto their premises if
     it was later discovered someone else in the town had COVID-19.

28

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-04064-RGK-SK

MALTZMAN & PARTNERS

681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

1 objective medical proof than are their physical counterparts." *Gottshall*, 512 U.S. at

2 552.

3 The Supreme Court in adopting the zone of danger test emphasized that it

4 would allow recovery for "emotional injury caused by the apprehension of *physical*

5 *impact*." *Gottshall*, 512 U.S. at 556. And in subsequently describing the test, it has

6 equated being "placed in immediate risk of physical harm" with "escap[ing] *instant*

7 *physical harm*." *Ayers*, 538 U.S. at 146. Expanding the category of "immediate risk"

8 to cover alleged exposure to a communicable disease which the Plaintiffs did not

9 contract would be unprecedented. Because Plaintiffs were not within the zone of

10 danger[7] under *Metro-North*, Francis Shay and Sandra Shay's allegations of

11 emotional distress, no matter how severe, are insufficient to survive a Motion to

12 Dismiss.[8]

13 *Metro-North*'s zone of danger test governs all species of tort claims seeking

14 emotional distress, whether or not styled as claims of "negligent infliction of

15 emotional distress" or otherwise. *See Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168,

16 1171 (10th Cir.2000) (*Metro-North* and *Gottshall* "focused on whether emotional

17 injuries were generally compensable under FELA, rather than upon the specific

18

---

19 [7] Cases that *do* find an immediate risk of harm provide a helpful contrast to Plaintiffs' inadequate
20 claims here. These cases involve "*threatened physical contact* that caused, or might have caused,
*immediate traumatic harm*." *Metro-North*, 521 U.S. at 430 (emphasis added) (collecting cases);
21 *see, e.g.*, *Stacy*, 609 F.3d at 1035 (freighter nearly struck plaintiff's vessel and then struck another
ship, killing its captain); *Sawyer Bros., Inc. v. Island Transporter, LLC*, 887 F.3d 23, 39 (1st Cir.
22 2018) (plaintiffs were aboard ferry that nearly capsized); *In re Clearsky Shipping Corp.*, No. Civ.
96-4099, 2002 WL 31496659, *1 (E.D. La. Nov. 7, 2002) (plaintiff was aboard a docked casino
23 boat as a vessel collided with nearby wharf); *Hutton v. Norwegian Cruise Line Ltd.*, 144
F.Supp.2d 1325 (S.D. Fla. 2001) (plaintiffs aboard ship that collided with another vessel).

24 [8] In *Gottshall*, one of the plaintiffs had suffered "insomnia, headaches, depression, and weight
25 loss," followed by a "nervous breakdown." 512 U.S. at 539. The other had experienced "nausea,
insomnia, cold sweats, and repetitive nightmares," plus weight loss, anxiety, and suicidal
26 ideations. *Id.* at 536-37. The Supreme Court held that even these significant emotional injuries
were not compensable because they did not stem from either a physical impact or a near-miss
27 physical impact—*i.e.*, neither plaintiff was in the zone of danger. Indeed, even extremely grave
physical results cannot be redressed unless the plaintiff was in the zone of danger. *Fulk v. Norfolk*
28 *S. Ry. Co.*, 35 F. Supp. 3d 749, 757 (M.D.N.C. 2014) (no recovery for "self-inflicted gunshot

1  cause of action."); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 755 (M.D.N.C.

2  2014) ("Federal courts have consistently applied the zone of danger test to all stand-

3  alone emotional distress claims.").

### 2. To Recover for Emotional Distress Plaintiffs Bruce Grant and Michelle Grant Must Allege Symptoms

6  For the period *before* Plaintiffs Bruce Grant and Michelle Grant's diagnosis,

7  recovery for emotional distress is barred.   Under the Supreme Court's decision

8  in *Metro-North*, a plaintiff alleging emotional distress from such exposure "cannot

9  recover unless, and until, he manifests symptoms of a disease." *Metro-North*

10  *Commuter R. Co. v. Buckley*, 521 U.S. 424, 427 (1997). The Supreme Court's hard-

11  and-fast rule from *Metro-North*, precluding a plaintiff's recovery for emotional

12  distress claims "unless, and until, he manifests symptoms of a disease," forecloses

13  any recovery for harm caused prior to their alleged contraction of COVID-19. 521

14  U.S. at 427.

### 3. To Recover for Emotional Distress All Plaintiffs Must Plausibly Allege a Physical Manifestation of the Claimed Distress

17  For the period *after* Plaintiffs Bruce Grant and Michelle Grant's alleged

18  diagnosis, and for the entirety of Plaintiff Francis Shay and Sandra Shay's claim,

19  recovery for emotional distress is barred because there is no alleged *physical*

20  *manifestation* of the claimed distress. Only emotional distress that causes non-trivial

21  physical consequences is compensable. A positive COVID-19 test result, in and of

22  itself, is not legally sufficient to support a claim for emotional distress. Rather,

23  courts require that emotional distress must cause non-trivial physical consequences.

24  In other words, "[g]eneral maritime law requires an 'objective manifestation' of the

25  emotional injury—a physical injury or effect which arises from the emotional

26  injury." *Wyler v. Holland Am. Line-USA, Inc.*, 2002 WL 32098495, at *1 (W.D.

27  Wash. Nov. 8, 2002); *accord Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477-

28  _____

wound" because plaintiff was never in zone of danger).

DEFENDANT'S MOTION TO DISMISS                                           2:20-CV-04064-RGK-SK

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

478 (5th Cir. 2001); *Duet v. Crosby Tugs, LLC*, 2008 WL 5273688, at *3 (E.D. La. Dec. 16, 2008) ("Plaintiff's emotional distress was not provoked by a physical injury, rather, plaintiff's physical injury was provoked by emotional distress"); *Tassinari v. Key W. Water Tours, L.C.*, 480 F. Supp. 2d 1318, 1325 (S.D. Fla. 2007) ("[S]tand-alone claims for negligent infliction of emotional distress require a physical manifestation of emotional injury."). Courts impose this physical-manifestation requirement because it "furnishes a 'guarantee of genuineness' thus limiting the prospects for a flood of fraudulent claims." *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 407 (S.D. Fla. 1995); *see also Tassinari*, 480 F. Supp. 2d at 1325 (S.D. Fla. 2007) (citing "the beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

Under this rule, minor physical consequences are not sufficient. *See, e.g.*, *Williams*, 907 F. Supp. At 407 (plaintiffs could not recover even though they were in the zone of danger because they "complain[ed] only of fear and/or seasickness which in most cases lasted no more than a few days"); *Ainsworth v. Penrod Drilling Co.*, 972 F.2d 546 (5th Cir. 1992) (barring recovery for emotional distress where the plaintiff suffered "trivial" injuries such as upset stomach, headache, and pulled muscles); *Ellenwood v. Exxon Shipping*, 795 F. Supp. 31, 35 (D. Me. 1992) (loss of sleep and loss of appetite insufficient). Here, Plaintiffs' Complaint contains no allegation of any physical manifestations of emotional distress for any of the Plaintiffs, let alone the serious and significant physical manifestation which is required. Plaintiffs' allegations that they "suffer from emotional distress" is exactly the sorts of generalized allegations of fear and anxiety that courts have held are clearly insufficient to support a claim for emotional distress. *Supra*; *see, e.g.*, *Williams* 907 F. Supp. at 407. This failure to allege a physical manifestation also provides an independent reason why Plaintiffs Bruce Grant and Michelle Grant cannot recover for the period before their diagnosis. Even if they had adequately pled that they contracted COVID-19 as a result of Defendant's conduct, their

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

13

1  emotional-distress claims would nonetheless fail for the separate reason that they
2  have not pled a physical manifestation of their emotional distress.

3  Similarly, Plaintiffs cannot recover (even following Bruce Grant and Michelle
4  Grant's alleged diagnosis) because they have not alleged any "genuine and serious"
5  manifestation of actual, physical symptoms. *Norfolk & W. Ry. Co. v. Ayers*, 538
6  U.S. 135, 157-58 (2003) (quoting *Smith v. A.C. & S., Inc.*, 843 F.2d 854, 859 (5th
7  Cir.1988)). As explained below, courts do not allow recovery based on mere
8  diagnoses absent some sort of concrete, "functional impairment." This rule is
9  necessary to avoid an anomalous, arbitrary result where a plaintiff might be able to
10 recover for the *fear* of something that, if it came to pass, he could not actually
11 recover for as a physical harm.

12 **C. Plaintiffs Cannot Recover for Fear or Even a Mere Diagnosis, Without**
13 **More, as a "Physical Harm"**

14 None of the Plaintiffs allege any non-emotional injury other than a conclusory
15 statement that Plaintiffs Bruce Grant and Michelle Grant "suffer from physical …
16 harm from the disease," (Compl. ¶ 25.). Simply adding the words "physical harm" is
17 insufficient to support Plaintiffs' Complaint.

18 Many persons who test positive for COVID-19 are asymptomatic. Courts
19 reject claims of physical injury based only on positive tests for asymptomatic
20 diseases. Rather, a plaintiff claiming "compensable harm" from a disease must
21 "adduc[e] objective testimony of a *functional impairment*." *In re Hawaii Fed.*
22 *Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) (emphasis added); *See*
23 *e.g.*, *Sheridan v. Cabot Corp.*, 113 F. App'x 444, 448 (3d Cir. 2004) ("asymptomatic
24 pleural thickening is not a sufficient physical injury to warrant damages"); *Sondag*
25 *v. Pneumo Abex Corp.*, 55 N.E.3d 1259, 1265 (Ill. App. Ct. 2016) ("To qualify as
26 'physical harm,' the alteration of the body must have a detrimental effect in a more
27 practical sense, such as by causing noticeable respiratory symptoms")
28 (citing *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 897 N.E.2d 1118, 1125

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

(2008); *Giffear v. Johns-Manville Corp.* (Pa. Super. Ct. 1993) 429 Pa.Super. 327, 340 [632 A.2d 880, 887-88], *aff'd sub nom. Simmons v. Pacor, Inc.* (1996) 543 Pa. 664 [674 A.2d 232] (asymptomatic contraction of an illness is not a legally compensable injury); *Owens–Illinois v. Armstrong,* 87 Md.App. 699, 591 A.2d 544, 561 (1991), *aff'd in part and rev'd in part on other grounds,* 326 Md. 107, 604 A.2d 47 (1992); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 4, Reporters' Note to cmt. c, at 59–60 (2010). Plaintiffs cannot recover negligence or gross negligence without alleging physical harm.

A COVID-19 diagnosis, without more, is not in itself a compensable physical harm. It is now accepted that most individuals who contract COVID-19 never experience symptoms.[9] And the complaint contains no allegation of any actual impairment due to the alleged diagnoses. Treating a positive test result with nothing more as a "physical harm" worth $1 million in compensatory damages, plus punitive damages, expands tort liability in the same unlimited and unpredictable way as allowing claims for pure emotional distress.

**D. Plaintiffs Have Not Plausibly Alleged Causation**

All of the Plaintiffs claims fail because they do not state any facts suggesting that any conduct by Defendant was the factual or proximate cause of their positive diagnosis or fear. As pled, the Complaint makes it impossible to determine if even those Plaintiffs who caught the virus contracted it onboard versus before embarkation, at some port of call, during their post-cruise government managed transportation or quarantine, or elsewhere. As such, Plaintiffs' claims should be dismissed.

Nowhere in the Complaint do Plaintiffs allege they contracted COVID-19 or experienced symptoms of the virus on the vessel (or at all). Plaintiffs do not allege

---

[9] Plaintiffs' Complaint itself acknowledges this fact, noting the rate of positive cases "especially among those without symptoms…" (Compl. at pg. 3.)

DEFENDANT'S MOTION TO DISMISS                                    2:20-CV-04064-RGK-SK

experiencing any specific physical injury or any ensuing sequelae related to COVID-19. (Compl. ¶ 25.)  They have not alleged that they were sick on the vessel, that they were diagnosed with COVID-19 on the vessel, or even that the virus entered their bodies on the vessel. Plaintiffs conspicuously fail to assert that they came into direct contact with any passengers or crew who had COVID-19.  Given that millions of people have tested positive for COVID-19, alleging causation requires more than simply saying they were aboard Defendant's vessel and then either feared or contracted COVID-19 on some unspecified date thereafter.

**E. Finding Plaintiffs' Claims Sufficient Would Invite the Exact Policy Consequences the Supreme Court Cautioned Against**

Finding Plaintiffs' claims sufficient would invite the exact harsh policy consequences the Supreme Court warned against. *See Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994); *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003). COVID-19 is a widespread pandemic, and is now well-known to be transmittable through airborne droplets. Any business, school, church or other venue alleged to have opened its doors a day too soon could be exposed to claims of emotional distress from anyone who stepped inside and then later tested positive for COVID-19 or feared contracting COVID-219, regardless of whether the individual alleges they came into contact with the virus at that establishment. Additionally, if a plaintiff can recover for emotional distress based on only a fear of exposure to a widespread disease like COVID-19 or for testing positive for the virus but having no symptoms, there will be no limit on who can recover in the wake of the pandemic.  This concern is even more significant in relation to a widespread and often undetectable disease like COVID-19. Airline travel and public transportation will prove impossible. Individuals who test positive after they attend a football game, transit through an airport, eat at a restaurant, or shop at a mall or store will have carte blanche to sue whoever has the deepest pockets based only on having been at a venue where

DEFENDANT'S MOTION TO DISMISS                                        2:20-CV-04064-RGK-SK

someone later is found to have tested positive for COVID-19. Allowing Plaintiffs' claims to proceed as pled, in other words, endorses the "nearly infinite and unpredictable liability for defendants" that *Gottshall* and *Metro-North* expressly set out to prevent.[10] *Ayers*, 538 U.S. at 146.

### F. Plaintiffs' Claims for Punitive Damages Are Foreclosed as a Matter of Law and Should be Dismissed or Stricken

Finally, even if Plaintiffs' claims could go forward on the merits, their claims for punitive damages are foreclosed as a matter of law and should therefore be dismissed under Rule 12(b)(6) or stricken under Rule 12(f).

The Supreme Court has recently clarified several important limitations on the availability of punitive damages in maritime cases, all of which make clear that punitive damages are unavailable in cases alleging only emotional distress—at least where that distress is not intentionally inflicted. In *The Dutra Group v. Batterton*, 139 S. Ct. 2275 (2019), the Supreme Court set forth a framework for deciding when punitive damages are available under general maritime law, and then applied that framework to hold that punitive damages are unavailable in claims for unseaworthiness. First, where there is no federal statute authorizing punitive damages, courts must determine "whether punitive damages have traditionally been awarded" in the category of case at issue. *Id.* at 2283. If they are not, then the imposition of punitive damages is precluded. *See Dunn v. Hatch*, 792 F. App'x 449, 451 (9th Cir. 2019) (*Batterton* "held that punitive damages cannot be recovered on claims in admiralty where there is no historical basis for allowing such damages"). If the imposition of punitive damages would create "bizarre disparities in the law,"

---

[10] A "fundamental interest of federal maritime jurisdiction" is "the protection of maritime commerce." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2287 (2019) (quotation marks omitted). The Supreme Court has urged courts to resist judicial expansions of maritime liability and remedies that would "frustrate" this protective purpose. *Id.* Allowing unpredictable and potentially crushing liability for ocean carriers in the wake of a pandemic would so seriously inhibit maritime commerce that principles of maritime law would independently require dismissal.

MALTZMAN & PARTNERS

681 Encinitas Boulevard, Suite 315
Encinitas, CA 92024
Telephone: (760) 942-9880 Fax: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                    2:20-CV-04064-RGK-SK

1  that further counsels against their availability. *Batterton*, 139 S. Ct. at 2287. And in
2  determining whether to permit punitive damages, courts must proceed "cautiously in
3  light of Congress's persistent pursuit of uniformity in the exercise of admiralty
4  jurisdiction." *Id.* at 2278 (*Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1986)).

5      Defendant is aware of no binding precedent supporting the imposition of
6  punitive damages for negligently (even grossly negligently) inflicted emotional
7  distress or harm to a passenger. To the contrary, any "tradition" of punitive damages
8  in maritime cases is limited to cases where the defendant's conduct is truly
9  "outrageous"—cases of "enormity or deplorable behavior." *Dunn*, 792 F. App'x at
10  452. And some courts have held expressly that punitive damages are unavailable to
11  "personal injury claimants … except in exceptional circumstances involving
12  crewmembers such as willful failure to furnish maintenance and cure to an injured
13  or ill seaman (who are viewed as special wards of the court requiring additional
14  protection) and in those very rare situations of intentional wrongdoing." *In re
15  Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d
16  1421, 1429 (11th Cir. 1997). As in *Batterton*, the absence of case law supporting the
17  availability of punitive damages in suits for negligently inflicted emotional distress
18  or harm "is practically dispositive." *Id.* at 2284.

19      But even if the history of punitive damages under maritime law were more
20  equivocal (which it is not), the imposition of punitive damages here would create the
21  same "bizarre disparit[y] in the law" that demanded foreclosure of punitive damages
22  in *Batterton*. The Court there noted that, if punitives were permitted for
23  unseaworthiness claims, "a mariner could make a claim for punitive damages if he
24  was *injured* onboard a ship, but," because of the Court's prior decision in *Miles*, "his
25  estate would lose the right to seek punitive damages if he *died* from his injuries."
26  139 S. Ct. at 2287 (emphasis added). The same disjoint would occur here, as the
27  Death on the High Seas Act ("DOHSA") expressly forbids the imposition of
28  punitive damages for deaths caused by incidents more than three miles offshore.

*See* 46 U.S.C. § 30303 (allowing damages only for "pecuniary loss"); *Batterton*, 139 S. Ct. at 2285 n.8. Under Plaintiffs' novel theory, passengers alleging exposure to a disease on the high seas can freely recover punitive damages if they never contracted the disease or if they got a positive test result for COVID-19 with no symptoms, and yet, if those same passengers died from the disease, DOHSA would squarely bar their claim for punitive damages. To avoid that arbitrary differential treatment, and to properly "pursue the policy expressed in congressional enactments" like DOHSA, punitive damages must be foreclosed. *Id.* at 2281.

The policies at play further cement that punitive damages cannot be available. To the extent that liability *alone* did not create the "infinite and unpredictable liability," *Ayers*, 538 U.S. at 146, the "stark unpredictability of punitive awards," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008), would make that threat an unavoidable reality.[11] In turn, the open-ended threat of punitive damages would encourage more cases and hobble "maritime commerce"—the "fundamental interest served by federal maritime jurisdiction." *Batterton*, 139 S. Ct. at 2287.

## V.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its motion to dismiss and to dismiss this case.

DATED: June 9, 2020                    MALTZMAN & PARTNERS


By:    *s/ Jeffrey B. Maltzman*
       Jeffrey B. Maltzman
       Edgar R. Nield
       Gabrielle De Santis Nield
       Rafaela P. Castells
       *Attorneys for Defendant,*
       *Princess Cruise Lines Ltd.*

---

[11] Even if punitive damages were available, the Supreme Court has held that "under maritime law, the maximum ratio of punitive damages to compensatory damages is 1-1." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1079 (9th Cir. 2009). If this Court does not dismiss or strike the request for punitive damages altogether, the Court should limit Plaintiffs' damages accordingly.

MALTZMAN & PARTNERS
681 ENCINITAS BOULEVARD, SUITE 315
ENCINITAS, CA 92024
TELEPHONE: (760) 942-9880 FAX: (760) 942-9882

DEFENDANT'S MOTION TO DISMISS                    2:20-CV-04064-RGK-SK